the injury sustained in the past by reason of the trespass which the defendants had committed. The judgment should be affirmed, with costs. All concur.

---

### CROOKE SMELTING & REFINING CO. *v.* TOWLE *et al.*

*(Supreme Court, General Term, First Department.* February 13, 1891.)

CONTRACT TO RENEW LEASE.

    Plaintiff wrote defendants, its subtenants: "Should you be inclined to remain in the premises you now occupy at a rental of $900 p. a., with conditions as in present lease, I would make it a 3 or 5 years lease." Defendants replied that they would accept a lease as stated in above letter, and asking plaintiff to call on them, to come to some terms about putting gas through the floors. Plaintiff then wrote to defendants in reference to the plumbing, and saying: "In the new lease we shall have to insist upon a clause whereby you bind yourselves to pay for repairs of damages caused by your men. With regard to the gas, we will see the owner about it, and let you know. We do not think there can be much objection to it." Plaintiff tendered a lease in the same terms as the other, which defendants refused to sign. *Held,* that there was not a completed contract for a renewed lease.

Appeal from circuit court, New York county.

Action by the Crooke Smelting & Refining Company against Catherine Towle and others. Plaintiff appeals from a judgment dismissing its complaint.

Argued before VAN BRUNT, P. J., and BARTLETT and BARRETT, JJ.

*Wyatt & Trimble,* for appellant. *Doherty, Durnin & Hendrick,* for respondents.

VAN BRUNT, P. J. In January, 1888, the defendants were, and for some years prior thereto had been, subtenants of the plaintiff. The lease under which they were so holding by its terms expired on the 1st of May, 1888. On the 17th of January, 1888, the plaintiff wrote the following letter to the defendants: "DEAR SIRS: The owner of this store demands a higher rental after May 1st. Should you be inclined to remain in the premises you now occupy at a rental of $900 p. a., with conditions as in present lease, I could make it a 3 or 5 years lease." No response having been received to this letter, on the 23d of January the plaintiff wrote again to defendants as follows: "DEAR SIRS: Could you favor us with an answer with regard to renewal of lease. We have to come to a decision ourselves to-morrow, and shall be much pleased to hear from you." On the 27th of January the defendants wrote to the plaintiff as follows: "DEAR SIR: We will accept lease for premises now occupied by us for a term of five years at a rental of $900 per a., as stated in letter of 17th inst. Should be obliged to you if you would call on us, as we would like to come to some terms about putting gas through the floors now occupied." On the 3d of February, 1888, the plaintiff wrote to the defendants as follows: "DEAR SIRS: The plumber reports that he finds the cause of the trouble to be that your men throw pieces of tin in the sink. I herewith send you one of the pieces extracted. Under the circumstances you will, I trust, pay the bill for repairs, which we shall send you; the damage having been done by your employes' carelessness. In the new lease we shall have to insist upon a clause whereby you bind yourselves to pay for repairs of damages caused by your men. With regard to the gas, we will see the owner about it, and let you know. We do not think there can be much objection to it." On the 27th of February it appears that the plaintiff had a lease drawn up for five years, and sent it to the defendants, by whom it was not signed, but returned some time in April. On the 1st of May the defendants moved out of the premises, which remained idle thereafter for a considerable length of time, and were then let at a reduced rental. This action was brought to recover the damages which the plaintiff sustained by reason of the refusal of the defendants to take the premises and accept the

lease tendered by the plaintiff. These facts appearing upon the trial, the complaint was dismissed, and from the judgment thereupon entered this appeal is taken.

It is claimed upon the part of the appellant that a complete cause of action was made out, because a completed contract for the leasing of the premises is contained in the correspondence which passed between the parties as above stated. There can be no question but that a valid contract may be made by letters, one party making an offer and the other accepting it. But it is a necessary requisite to the correspondence making a contract that the parties should understand they were so contracting, and that there is nothing to be done according to the understanding of the parties further to fix the terms of the contract. An examination of the correspondence in question shows clearly that neither party understood that all of the terms of the lease had been fixed and determined by the correspondence which passed between them. Thus it is apparent from the defendants' letter of January 27th that they expected to have further communications in regard to the putting in of the gas through the floors occupied by them, and in the letter of February 3d the plaintiff says that it will insist upon a clause additional to that which had been in the previous lease; thus showing that it was then their understanding that the terms of the letting had not been in all respects settled. Under such circumstances, when it happens to suit the pleasure of one of the parties to insist that the correspondence has made a contract, such claim cannot prevail, because, if the other party was insisting that a contract had been entered into, they might say with perfect truth that they did not understand but what they had a right in the making of the lease to put in additional requirements. We think, therefore, that there was no intention upon the part of either party to enter into a contract by means of this correspondence, and the case seems to come clearly within the principles laid down in *Mayer* v. *McCreery,* 119 N. Y. 435, 23 N. E. Rep. 1045. The judgment should be affirmed, with costs.

BARRETT, J., (*concurring.*) I concur. What we have to decide is whether the minds of the parties met. That they had not fully is evidenced by the plaintiff's own letter of February 3, 1888. Why should we treat this letter as an attempt to modify a completed contract? It fairly imports the plaintiff's understanding that the matter had not been finally settled in all its details by the preceding correspondence, and that it still had a right to insist upon a new clause in the proposed lease.

BARTLETT, J., concurs.